UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING | ) | |
| COMMISSION, | ) | COMPLAINT FOR INJUNCTIVE |
| | ) | AND OTHER EQUITABLE |
| Plaintiff, | ) | RELIEF AND FOR CIVIL |
| | ) | MONETARY PENALTIES |
| v. | ) | UNDER THE COMMODITY |
| | ) | EXCHANGE ACT AND |
| JOSHUA CHRISTIAN MCDONALD and | ) | COMMISSION REGULATIONS |
| PERFECTION PR FIRM LLC, | ) | |
| | ) | Case No. 4:20-cv-00261 |
| Defendants. | ) | |

Plaintiff Commodity Futures Trading Commission ("Commission") alleges as follows:

## I.   SUMMARY

1.     From at least August 2017 through the present (the "Relevant Period"), Joshua Christian McDonald ("McDonald"), individually and as an officer, employee, or agent of Perfection PR Firm LLC ("Perfection PR") (together, "Defendants"), engaged in a fraudulent scheme through which he solicited and received at least $440,000 from at least twelve individuals or entities ("Pool Participants") for a pooled investment vehicle that traded off-exchange leveraged or margined foreign currency exchange ("forex") contracts.

2.     In soliciting prospective Pool Participants to deposit investment funds, Defendants falsely represented that (1) McDonald had over four years of successful forex trading experience; (2) Defendants were successfully managing millions of dollars on behalf of clients; (3) Defendants "consistently" made monthly profits ranging from 20% to 100% through forex trading; (4) Pool Participants' accounts were guaranteed to have a 10% to 50% monthly return; and (5) only a small percentage of Pool Participants' funds would be at risk at any point.  In addition, Defendants displayed fabricated data purporting to show that they had made profitable

trades.  Defendants made these false representations both orally and in email messages, text messages, instant messages, and documents.

3.      In soliciting funds from existing and prospective Pool Participants, Defendants omitted material facts such as (1) they traded only a portion of Pool Participants' funds; (2) McDonald lost money trading in some months; (3) Defendants commingled Pool Participants' funds with the funds of customers of another business; (4) Defendants misappropriated Pool Participants' funds; and (5) neither of the Defendants were registered with the Commission as required by federal law.

4.      To conceal and perpetuate their fraud, Defendants provided false account statements and updates to Pool Participants that reflected the promised returns from Defendants' purported successful forex trading.  The false account statements and updates concealed Defendants' misappropriation, lack of trading, and/or trading losses.

5.      During the Relevant Period, Defendants commingled Pool Participants' investment funds with Defendants' funds and the funds of customers of another business.  In addition, Defendants misappropriated pooled investment funds by diverting some funds into McDonald's cryptocurrency accounts, paying McDonald's personal expenses, and refusing to return funds to Pool Participants when requested.  As a result of Defendants' fraud and misappropriation, Pool Participants have lost most, if not all, of their funds.

6.      By virtue of this conduct, and as more fully set forth below, Defendants have engaged, are engaging, and/or are about to engage in acts and practices in violation of Sections 4b(a)(2)(A)-(C) and 4$o$(1)(A) and (B) of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6$o$(1)(A), (B) (2012), and Commission Regulations ("Regulations") 4.20(a)-(c), 4.41(a), and 5.2(b), 17 C.F.R. §§ 4.20(a)-(c), 4.41(a), 5.2(b) (2018).

7.     Additionally, Perfection PR acted at all times during the Relevant Period as a commodity pool operator ("CPO") by soliciting and accepting funds for a pooled investment vehicle that is not an eligible contract participant ("ECP") and that engaged in retail forex transactions, without being registered or exempt from registration with the Commission as a CPO, as required by the Act and Regulations.  Perfection PR's failure to register as a CPO violates Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6m(1) (2012), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2018).

8.     Similarly, McDonald solicited funds for participation in a pooled investment vehicle trading off-exchange leveraged or margined forex contracts, while associated with Perfection PR as an officer, employee, or agent without being registered with the Commission as an associated person ("AP") of Perfection PR, as required by the Act and Regulations. McDonald's failure to register as an AP of a CPO violates Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) 6k(2) (2012), and Regulation 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2018).

9.     Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint or in similar acts and practices, as described more fully below.

10.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel compliance with the Act and Regulations.  In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

## II.     JURISDICTION AND VENUE

11.     <u>Jurisdiction</u>.  This Court possesses jurisdiction over this action pursuant to 28

U.S.C. § 1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012)

(providing that U.S. district courts have original jurisdiction over civil actions commenced by the

United States or by any agency expressly authorized to sue by Act of Congress).  In addition,

Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), provides that the Commission may bring actions

for injunctive relief or to enforce compliance with the Act in the proper district court of the

United States whenever it shall appear to the Commission that such person has engaged, is

engaging, or is about to engage in any act or practice constituting a violation of any provision of

the Act or any rule, regulation, or order thereunder.

12.     The Commission has jurisdiction over the forex solicitations and transactions at

issue in this case pursuant to Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2012).

13.     <u>Venue</u>.  Venue lies properly in this District pursuant to Section 6c(e) of the Act, 7

U.S.C. § 13a-1(e) (2012), because the Defendants fraudulently solicited and misappropriated

funds from individuals and entities within this District.

## III.     THE PARTIES

14.     Plaintiff Commodity Futures Trading Commission is an independent federal

regulatory agency charged by Congress with the administration and enforcement of the Act and

the Commission Regulations promulgated thereunder.  The Commission maintains its principal

office at 1155 21st Street NW, Washington, DC 20581.

15.     Defendant Joshua Christian McDonald is the founder and Chief Executive Officer

of Defendant Perfection PR Firm LLC.  Upon information and belief, McDonald currently

resides in or around Georgetown, Texas.  McDonald has never been registered with the

Commission.

16.     Defendant Perfection PR Firm LLC is a Delaware limited liability company that McDonald formed on January 29, 2016, with a registered office in Newark, Delaware. McDonald is the sole member of Perfection PR and controls its operations, finances, accounts, and books and records.  Perfection PR has never been registered with the Commission.

## IV.     FACTS

### A.     Operation of the Pool and Solicitation of Participants

17.     During the Relevant Period, McDonald, individually and acting as an officer, employee, or agent of Perfection PR, solicited and pooled at least $440,000 from at least twelve individuals or entities, in connection with the trading of retail forex contracts.  At the direction of McDonald, Pool Participants deposited their investment funds, primarily via wire transfer, into bank accounts in McDonald's name at Citibank N.A. ("Citibank") or in the name of Perfection PR at Regions Bank ("Regions").

18.     Pool Participants were introduced to McDonald by family members, friends, or acquaintances, some of whom were offered referral fees by McDonald.  Following an introduction, McDonald communicated directly with existing and prospective Pool Participants via telephone, email, text message, social media, and video conferencing.  In communications with prospective Pool Participants, McDonald touted his purported forex trading expertise and successful track record, promised returns of between 10% and 50% per month, and minimized the risk of loss.  McDonald told at least one prospective Pool Participant that her invested funds would be pooled with the investment funds of other Pool Participants.

19.     In December 2017 and January 2018, McDonald sent to at least three prospective Pool Participants an email with the subject "Forex Investment Introduction" that stated:  "Thank you for allowing us to show you this opportunity for investment in our Forex program.  Please find the following document attached, of our past & current client's portfolios & historical

information."  Attached to the email was a PDF document named "Final Investment Proposal," which made representations about the amount of profits Pool Participants could expect, among other things.  The email also represented: "Commission Percentage – Fee is taken off profits made for you per month: - $1k-$25k Account – (40%) - $25k or more account – (35%)".  In the email, McDonald identified himself as the "CEO" of Perfection PR.

20.     At the direction of McDonald, Pool Participants entered into a "Forex Investment Agreement" with Perfection PR.  The agreement stated that "Perfection PR Firm LLC would like to offer investors a place in our Forex Trading Program" and that Perfection PR "offers said investment opportunity & return on investment through Forex trading."  The agreement stated that "the minimum goal is 20% return on investment per month.  Yet the company's goal is to secure as much profit as possible."  The term of the Forex Investment Agreement was typically between thirty and ninety days.  McDonald signed the agreements on behalf of Perfection PR.

21.     In December 2017, McDonald formed a second entity in Delaware, Perfection Forex LP ("Perfection Forex").  McDonald was the sole general partner of Perfection Forex.  Via a website and social media accounts, McDonald and Perfection Forex have solicit the public to deposit funds for forex trading training, trading signals, and managed accounts.  Beginning in or about March 2018 and continuing through at least June 2018, McDonald commingled funds collected from Perfection Forex customers with Pool Participant funds in McDonald's personal Citibank account.

22.     At least one Pool Participant was not an ECP and the commodity pool operated by Defendants was not an ECP, as that term is defined in Section 1a(18) of the Act, 7 U.S.C. §1a(18) (2012).

23.     On May 4, 2018, McDonald sent an email message to one Pool Participant, M.B., stating that Perfection PR "regrets to inform you that the portfolio and trades made throughout the investment were not as successful as we had hoped, based off of market conditions and movements of trades the portfolio final overview and result was a loss… With [current events] we continually fell behind with losses… At this time Perfection PR Firm LLC and the relationship with the client has come to an end, due to depletion of funds, based off loss."

24.     McDonald eventually stopped responding to communications from all Pool Participants and has failed to return their remaining investment funds despite repeated requests.

25.     Although Perfection PR did not meet the requirements for exemption, on May 20, 2018, McDonald filed with the National Futures Association a notice of exemption under Commission Regulation 4.13(a)(2), 17 C.F.R. § 4.13(a)(2) (2018), for a pool called "Perfection PR Firm Forex Investment Program."  The exemption notice was withdrawn on March 4, 2019.

**B.     Trading and Misappropriation of Funds**

26.     In or about June 2017, McDonald opened a trading account in his own name at a retail foreign exchange dealer ("RFED") registered with the Commission ("RFED personal account") and, in August 2017, began depositing Pool Participants' funds into the account.  From August 2017 to February 2018, McDonald deposited a total of $119,110 of Pool Participants' funds and made periodic withdrawals totaling $28,350.  McDonald engaged in leveraged or margined forex transactions in the account.  By month, the RFED personal account showed the following profit and loss:

| Month/ Year | Closed Trade Profit (Loss) |
| --- | --- |
| 6/17 | $251.46 |
| 7/17 | $73.86 |
| 8/17 | ($902.77) |
| 9/17 | $800.68 |

| 10/17 | $3,301.70 |
|---|---|
| 11/17 | ($10,469.21) |
| 12/17 | $56,175.00 |
| 1/18 | ($33,975.74) |
| 2/18 | $4,396.07 |
| 3/18 | ($8,678.46) |
| TOTAL | $10,972.59 |

27.   Overall, McDonald had a cumulative profit of $10,972.59 in the RFED personal account for the ten months that it was traded.  On March 6, 2018, McDonald withdrew all funds remaining in the RFED personal account (approximately $106,000) and ceased trading in that account.

28.   In January 2018, McDonald opened a second trading account with the same RFED in the name of Perfection PR ("RFED corporate account") and in the same month deposited a total of $140,000 of Pool Participants' funds.  In February 2018, McDonald made periodic withdrawals totaling $19,000.  McDonald engaged in leveraged or margined forex transactions in the account.  By month, the RFED corporate account showed the following profit and loss:

| Month/ Year | Closed Trade Profit (Loss) |
|---|---|
| 1/18 | ($48,052.09) |
| 2/18 | $4,054.00 |
| TOTAL | ($43,998.09) |

29.   Overall, the RFED corporate account suffered a cumulative loss of $43,998.09 during the two months that it was actively traded.  On February 27, 2018, McDonald withdrew all funds remaining in the RFED corporate account (approximately $79,000) and ceased trading in that account.

30.     From December 2017 through May 2018, McDonald transferred via wire transfer a total of $294,000—including $165,000 of the funds withdrawn from the RFED accounts in February and March 2018—from Perfection PR's Regions account to a Bulgaria bank account in the name of a Belize-registered company that offers internet-based leveraged or margined forex trading.  During the same period, McDonald returned a total of $88,649 from the Belize forex firm to Perfection PR's Regions account.

31.     Although Pool Participants deposited funds with Defendants only for the purpose of forex trading, during the Relevant Period, McDonald transferred via wire transfer and ACH over $92,000 from his Citibank account and Perfection PR's Regions account to companies selling cryptocurrency or offering accounts for holding cryptocurrency.  During that period, only approximately $28,000 was returned from the cryptocurrency companies.

32.     While McDonald transferred over $135,000 from the forex trading accounts and cryptocurrency companies back to the Citibank and Regions accounts during the Relevant Period, he returned only approximately $31,000 to the twelve known Pool Participants as redemptions or purported profits.  McDonald used the remaining funds for personal expenses such as rent, food, travel, and shopping, paying by electronic funds transfers, debit card purchases, and checks.

33.     For example, McDonald opened the Perfection PR Regions account on or about November 16, 2017, with a $100 deposit.  On November 22, 2017, Pool Participant C.C. wired $50,000 into that account.  Between November 22, 2017, and November 30, 2017, McDonald spent over $4,000 of Pool Participant C.C.'s investment at various retail stores, including $1,835.38 at a Best Buy electronics store, $567.60 at an American Eagle clothing store, and

$461.04 at a Joseph A. Bank clothing store.  At the end of November 2017, the balance in the Regions account was $45,942.39.

34.     At all relevant times, McDonald was the sole signatory on the bank accounts at Citibank and Regions.  He was also the sole person authorized to trade in the RFED accounts. McDonald transferred funds to and received funds from the Belize forex firm and provided at least one Pool Participant with a purported trade statement from the Belize forex firm. Accordingly, at all relevant times McDonald had personal knowledge of the total amount of funds transferred to him from Pool Participants, the disposition of those funds, the trades effected in the RFED accounts and the account(s) with the Belize forex firm, and the performance of his trading.

**C.     Material Misrepresentations and Omissions to Pool Participants**

35.     In soliciting funds from existing and prospective Pool Participants during the Relevant Period, McDonald made material misrepresentations and omissions, orally and in writing, regarding his trading expertise, his trading track record, and the performance of Pool Participants' investments.

36.     For example, in or about early November 2017, in soliciting investment funds from Pool Participant M.B., McDonald represented via telephone that he had been very successful trading forex and that his firm was managing several million dollars in client assets. McDonald also told M.B. that only 2% to 4% of his investment would be at risk and that the expected monthly rate of return for his investment was between 10% and 50%.

37.     In fact, in October 2017, Defendants had only one client who had invested $10,000 in August 2017, and McDonald had transferred almost the entire $10,000 to the RFED personal account.  Additionally, at that point, McDonald's forex trading in the RFED personal

account had earned only very modest monthly profits and had suffered an overall loss in August 2017.

38.     In or around November 2017, while soliciting investment funds from Pool Participant S.R., McDonald represented that her funds would be pooled with the funds of other participants and be used to trade forex; promised that she would receive a 20% to 50% monthly return on her investment, with a maximum risk of only 10% loss; and claimed that he had been trading forex for four years and had never suffered a loss.

39.      In reality, McDonald opened his first known forex trading account with an RFED in June 2017.  In the application to open this account, McDonald stated that he had less than six months experience in trading futures, options, and forex.  Moreover, McDonald's forex trading in that account had not earned consistent profits in the percentages promised to Pool Participants.

40.     In soliciting them to deposit investment funds, McDonald provided a PDF document called "Final Investment Proposal" to Pool Participants M.B. (in November 2017), K.B. (on December 24, 2017), and M.D. (on January 7, 2018), as well as prospective Pool Participant P.D. (on December 13, 2017).  The document stated, among other things:

      a)  "We offer investment management by trading our client's capital in the Forex Market. (Foreign Exchange Market)";

      b)  "We have consistently brought a monthly return of 20% [or "50% to 100%"] on our client's investments.";

      c)  "'Perfection Forex' has had 100% success rate with all of our clients, we have brought a minimum monthly return of 20% or more in profits."; and

      d)  "With clients ranging from $10,000 to $1,000,000 Million plus."

41.     The "Final Investment Proposal" showed purported examples of returns earned by clients, including a $1 million deposit that earned 226.5% profit in six months and a $100,000 deposit that earned over 200% profit in two months.  The "Final Investment Proposal" also displayed images of a trading account mobile phone application, which listed completed trades and showed large overall returns.

42.     In fact, Defendants never had a client who deposited one million dollars—the largest total investment by any one Pool Participant was $150,000—and McDonald's trading results were inconsistent, with overall losses in some months.  Additionally, the trades displayed in the images did not occur in the RFED trading accounts and no Pool Participant had earned the depicted large returns.

43.     During the Relevant Period, McDonald, both orally and in written account statements or updates, periodically represented to Pool Participants that their investments had increased in value due to his successful forex trading, when in fact in some months McDonald's forex trading produced losses.

44.     For example, in a Facebook Messenger conversation with Pool Participant R.P. on December 3, 2017, McDonald stated "you are at 20% for the first month."  However, McDonald's trading in the RFED personal account actually produced overall losses exceeding $10,000 in November 2017.

45.     On or about February 12, 2018, McDonald sent to Pool Participant S.R. by email or text message an account update on Perfection PR and Perfection Forex letterhead, representing that the Defendants' forex trading was "providing 20% for your first month with us."  The account update included no actual trade history report or statement.  Similarly, on February 8, 2018, McDonald sent to Pool Participant K.B. via email a "Forex Earnings Report"

on Perfection PR and Perfection Forex letterhead.  The report represented that Defendants' forex trading had earned K.B. a 30% profit for the previous month.  In truth, McDonald's trading in January 2018 produced overall losses of over $33,000 in the RFED personal account and over $48,000 in the RFED corporate account.

46.     During the Relevant Period, McDonald failed to disclose to Pool Participants that he suffered trading losses or the extent of those losses.  He also failed to disclose that, rather than trade forex contracts, he used some pooled funds to purchase cryptocurrency and to pay for personal expenses such as rent, groceries, fast food, medical care, and shopping.

## V.     STATUTORY AND REGULATORY VIOLATIONS

### COUNT ONE

### FRAUD IN CONNECTION WITH FOREX CONTRACTS
### Violations of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)
### (Defendants McDonald and Perfection PR)

47.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

48.     Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012), makes it unlawful:

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person other than on or subject to the rules of a designated contract market—(A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person.

49.     Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2012), states that 7 U.S.C. § 6b applies to the forex transactions, agreements, or contracts offered by Defendants as if they were contracts of sale of a commodity for future delivery.

50.     Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2018), makes it unlawful:

> for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction: (1) To cheat or defraud or attempt to cheat or defraud any person; (2) Willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or (3) Willfully to deceive or attempt to deceive any person by any means whatsoever.

51.     As described herein, Defendants violated 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b) by cheating or defrauding, or attempting to cheat or defraud, other persons; issuing or causing to be issued false statements and records; and willfully deceiving or attempting to deceive other persons in connection with the offering of, or entering into, the off-exchange leveraged or margined forex transactions alleged herein, by, among other things: (i) fraudulently soliciting Pool Participants and prospective Pool Participants by making material misrepresentations and omissions about Defendants' forex trading experience, Defendants' trading abilities and profits, Defendants' use of deposited funds, and Defendants' registration status; (ii) misappropriating Pool Participants' funds; and (iii) fabricating false records and account statements.

52.     Defendants engaged in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to:  interstate wires for transfer of funds, e-mail, websites, and other electronic communication devices.

53.     Defendants engaged in the acts and practices described above knowingly, willfully, or with reckless disregard for the truth.

54.     The foregoing acts of fraudulent solicitation, misappropriation, and false statements by McDonald occurred within the course and scope of his employment, agency, or office with Perfection PR.  Therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2018), Perfection PR is liable for McDonald's violations of the Act and Regulations, as alleged in this count.

55.     McDonald controlled Perfection PR, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Perfection PR's violations of the Act and Regulations alleged in this count.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), McDonald is liable for Perfection PR's violations of the Act and Regulations, as alleged in this count.

56.     Each act of fraudulent solicitation, misappropriation, and false statement or report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b).

## COUNT TWO

### FRAUD BY A COMMODITY POOL OPERATOR
### AND ASSOCIATED PERSON OF A COMMODITY POOL OPERATOR
### Violations of 7 U.S.C. § 6*o*(1) and 17 C.F.R. § 4.41(a)
### (Defendants McDonald and Perfection PR)

57.     The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

58.     Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012), makes it unlawful for a CPO or an AP of a CPO

> by use of the mails or any other means or instrumentality of interstate commerce, directly or indirectly – (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a

fraud or deceit upon any client or participant or prospective client
or participant.

59.     Regulation 5.4, 17 C.F.R. § 5.4 (2018), states that Part 4 of the Regulations, 17

C.F.R. pt. 4 (2018), applies to any person required to register as a CPO pursuant to Part 5 of the

Regulations related to off-exchange forex transactions, 17 C.F.R. pt. 5 (2018).

60.     Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2018), makes it unlawful for any CPO, or

any principal thereof, to publish, distribute, or broadcast, whether by electronic media or

otherwise, any report, letter, circular, memorandum, publication, writing, advertisement, or other

literature or advice that (1) employs any device, scheme, or artifice to defraud any participant or

client or prospective participant or client; or (2) involves any transaction, practice, or course of

business which operates as a fraud or deceit upon any participant or client or any prospective

participant or client.

61.     As alleged herein, Defendant Perfection PR was required to register as a CPO

during the Relevant Period.

62.     As set forth above, during the Relevant Period, Perfection PR, through

McDonald, acted as a CPO by soliciting, accepting, or receiving funds from the public while

engaged in a business that is of the nature of an investment trust, syndicate, or similar form of

enterprise, for the purpose of, among other things, trading in off-exchange leveraged or margined

forex contracts.

63.     McDonald and Perfection PR, through McDonald, violated 7 U.S.C. § 6*o*(1)(A)

and (B) and 17 C.F.R. § 4.41(a) in that by use of the mails or any other means or instrumentality

of interstate commerce they employed or are employing a device, scheme or artifice to defraud

prospective and existing Pool Participants or engaged or are engaging in transactions, practices,

or a course of business which operated or operates as a fraud or deceit upon Pool Participants or prospective Pool Participants.

64.     The foregoing acts and/or omissions by McDonald occurred within the scope of his employment, office, or agency with Perfection PR.  Therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2018), Perfection PR is liable for McDonald's violations of the Act and Regulations, as alleged in this count.

65.     McDonald controlled, directly or indirectly, Perfection PR and did not act in good faith, or knowingly induced, directly or indirectly, Perfection PR to commit the acts and/or omissions alleged herein.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), McDonald is liable for Perfection PR's violations of the Act and Regulations, as alleged in this count.

66.     Each act of fraudulent solicitation, misappropriation and false statement or report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6*o*(1) and 17 C.F.R. § 4.41(a).

## COUNT THREE

**FAILURE TO REGISTER AS A COMMODITY POOL OPERATOR**
**Violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1) and**
**17 C.F.R. § 5.3(a)(2)(i)**
**(Defendant Perfection PR)**

67.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

68.     Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) (2012), prohibits any person from operating or soliciting funds, securities, or property for any pooled investment vehicle that is not an ECP in connection with agreements, contracts, or transactions in

forex, unless registered with the Commission, with certain exceptions not applicable to Defendants.

69.     Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), makes it unlawful for any CPO, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.

70.     Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2018), requires any CPO engaged in retail forex transactions to register with the Commission.  Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2018), defines a CPO as any person who "operates or solicits funds, securities, or property for a pooled investment vehicle . . . that engages in retail forex transactions."

71.     During the Relevant Period, Perfection PR, which was not exempt from registration as a CPO, acted as a CPO and made use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO by operating or soliciting funds for a pooled investment vehicle that is not an ECP and that engages in retail forex transactions. Perfection PR engaged in this conduct without being registered with the Commission in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1) and 17 C.F.R. § 5.3(a)(2)(i).

72.     McDonald controlled Perfection PR, directly or indirectly, and did not act in good faith and knowingly induced, directly or indirectly, Perfection PR to commit the acts and/or omissions alleged herein.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), McDonald is liable for Perfection PR's violations of the Act and Regulations, as alleged in this count.

## COUNT FOUR

**FAILURE TO REGISTER AS AN ASSOCIATED PERSON
OF A COMMODITY POOL OPERATOR
Violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6k(2) and
17 C.F.R. §§ 3.12 and 5.3(a)(2)(ii)
(Defendant McDonald)**

73.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

74.     Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) (2012), prohibits any person from operating or soliciting funds, securities, or property for any pooled investment vehicle that is not an ECP in connection with agreements, contracts, or transactions in forex, unless registered with the Commission, with certain exceptions not applicable to Defendants.

75.     Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012), and Regulation 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2018), require registration with the Commission for any person who is associated with a CPO as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves the solicitation of funds, securities, or property for participation in a commodity pool or the supervision of any person or persons so engaged.

76.     Regulation 3.12, 17 C.F.R. § 3.12 (2018), prohibits any person from being an associated person of a CPO unless that person is registered with the Commission as an associated person of the sponsoring CPO.

77.     Regulation 5.1(d)(2), 17 C.F.R. § 5.1(d)(2) (2018), defines an associated person, for purposes of the Part 5 of the Regulations relating to forex transactions, as any natural person

associated with a CPO as a partner, officer, employee, consultant, or agent that is involved in the solicitation of funds, securities, or property, or the supervision of any such person so engaged.

78.     During the Relevant Period, McDonald acted as an associated person of a CPO by (i) soliciting funds, securities, or property for participation in a commodity pool operated by Perfection PR, and (ii) operating or soliciting funds, securities, or property for the Perfection PR pooled investment vehicle, which was not ECP, in connection with off-exchange leveraged or margined forex transactions.  McDonald engaged in this conduct without being registered with the Commission as an AP of CPO Perfection PR, in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6k(2) and 17 C.F.R. §§ 3.12 and 5.3(a)(2)(ii).

79.      The foregoing acts by McDonald occurred within the scope of his employment, office, or agency with Perfection PR.  Therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2018), Perfection PR is liable for McDonald's violations of the Act and Regulations, as alleged in this count.

<u>**COUNT FIVE**</u>

**PROHIBITED ACTIVITIES BY A COMMODITY POOL OPERATOR**
**Violations of 17 C.F.R. § 4.20(a)(1),(b), and (c)**
**(Defendant Perfection PR)**

80.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

81.     Regulation 4.20(a)(1), 17 C.F.R. § 4.20(a) (2018), requires a CPO to operate its pool as a legal entity separate from that of the CPO.

82.     Regulation 4.20(b), 17 C.F.R. § 4.20(b) (2018), requires that all funds, securities, or other property received by a CPO from a prospective or existing Pool Participant must be received in the commodity pool's name.

83.     Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2018), prohibits a CPO from comingling the property of any pool it operates with the property of any other person.

84.     As set forth above, during the Relevant Period, Perfection PR, acting through McDonald and while acting as a CPO, violated 17 C.F.R. § 4.20(a), (b), and (c) by:  (i) failing to operate the commodity pool as a legal entity separate from Perfection PR, the CPO; (ii) receiving Pool Participant funds the name of Perfection PR, rather than in the name of the commodity pool; and (iii) commingling the property of the commodity pool with the funds of Perfection PR and McDonald.

85.     McDonald controlled Perfection PR, directly or indirectly, and did not act in good faith and knowingly induced, directly or indirectly, Perfection PR to commit the acts and/or omissions alleged herein.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), McDonald is liable for Perfection PR's violations of the Act and Regulations, as alleged in this count.

## VI.    RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers:

A.      Find that Defendants McDonald and Perfection PR violated Sections 2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A)-(C), and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A)-(C), 6o(1)(A), (B) (2012), and Regulations 4.41(a) and 5.2(b), 17 C.F.R. §§ 4.41(a), 5.2(b) (2018);

B.      Find that Defendant Perfection PR violated Section 4m(1) of the Act, 7 U.S.C.   § 6m(1) (2012), and Regulations 4.20(a)(1), (b), and (c) and 5.3(a)(2)(i), 17 C.F.R. §§ 4.20(a)(1), (b), (c), 5.3(a)(2)(i) (2018);

- 21 -

C.      Find that Defendant McDonald violated Section 4k(2) of the Act, 7 U.S.C.

§ 6k(2) (2012), and Regulation 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2018);

D.      Enter an order of permanent injunction enjoining McDonald and Perfection PR,

and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in

active concert with them, who receive actual notice of such order by personal service or

otherwise, from engaging in the conduct described above, in violation of 7 U.S.C.

§§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A)-(C), and 6*o*(1)(A) and (B) and 17 C.F.R. §§ 4.41(a) and

5.2(b);

E.      Enter an order of permanent injunction enjoining Perfection PR and its affiliates,

agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with

it, who receive actual notice of such order by personal service or otherwise, from engaging in the

conduct described above, in violation of 7 U.S.C. § 6m(1) and 17 C.F.R. §§ 4.20(a)(1), (b), (c)

and 5.3(a)(2)(i).

F.      Enter an order of permanent injunction enjoining McDonald and his affiliates,

agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with

him, who receive actual notice of such order by personal service or otherwise, from engaging in

the conduct described above, in violation of 7 U.S.C. § 6k(2) and 17 C.F.R. § 5.3(a)(2)(ii).

G.      Enter an order of permanent injunction restraining and enjoining Defendants, and

their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in

active concert with them, from directly or indirectly:

　　　　1)      Trading on or subject to the rules of any registered entity (as that term is

　　　　　　　defined in Section la of the Act, 7 U.S.C. § 1a(40) (2012));

　　　　2)      Entering into any transactions involving "commodity interests" (as that

- 22 -

term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2018)) for accounts

held in the name of any Defendant or for accounts in which any Defendant

has a direct or indirect interest;

3)     Having any commodity interests traded on any Defendant's behalf;

4)     Controlling or directing the trading for or on behalf of any other person or

entity, whether by power of attorney or otherwise, in any account

involving commodity interests;

5)     Soliciting, receiving, or accepting any funds from any person for the

purpose of purchasing or selling any commodity interests;

6)     Applying for registration or claiming exemption from registration with the

Commission in any capacity, and engaging in any activity requiring such

registration or exemption from registration with the Commission except as

provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018); and

7)     Acting as a principal (as that term is defined in Regulation 3.1(a), 17

C.F.R. § 3.1(a) (2018)), agent, or any other officer or employee of any

person registered, exempted from registration, or required to be registered

with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9);

and/or

8)     Engaging in any business activities related to commodity interests;

H.    Enter an order directing Defendants, as well as any third-party transferee and/or

successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits

received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading

profits derived, directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described herein, including pre-judgment and post-judgment interest;

I.       Enter an order requiring Defendants, as well as any successors thereof, to make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

J.       Enter an order directing Defendants to pay a civil monetary penalty assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 599–600, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2018), for each violation of the Act and Regulations, as described herein;

K.       Enter an order directing Defendants and any of their successors, holding companies and alter egos, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between, with, or among Defendants and any of the Pool Participants whose funds were received by Defendants as a result of the acts and practices which constituted violations of the Act and the Regulations as described herein;

L.       Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

M.       Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

- 24 -

Dated: February 13, 2020

Respectfully submitted,

COMMODITY FUTURES TRADING
COMMISSION

Christine Ryall #0983550(FL)
Julia Colarusso #1010466(DC); #80241(VA)
Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, N.W.
Washington D.C. 20581
(202) 418-5000

- 25 -